RTP:NR
F. #2019R01359

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

       - against -

INGRIS CORONADO,

       Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

C O M P L A I N T
A N D  A F F I D A V I T  I N
S U P P O R T  O F  A R R E S T
W A R R A N T

(18 U.S.C. § 1343)

20-MJ-854

EASTERN DISTRICT OF NEW YORK, SS:

       ANTHONY CASOLA, being duly sworn, deposes and states that he is a Special Agent with the Federal Bureau of Investigation, duly appointed according to law and acting as such.

       Upon information and belief, in or about and between August 2014 and September 2018, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant INGRIS CORONADO, did devise a scheme and artifice to defraud her employer, a not-for-profit organization operating in Queens, New York, and to obtain money and property from it by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds.

       (Title 18, United States Code, Section 1343)

2

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been involved in the investigation of numerous cases involving the use of the mail or electronic means of communication to facilitate financial frauds, including investigations of the theft of funds from not-for-profit entities. I am familiar with the facts and circumstances set forth below from my participation in the investigation; my review of the investigative file, and from reports of other law enforcement officers involved in the investigation.

Background

2. The New York City Department of Investigation ("DOI") and FBI have been investigating potential financial improprieties relating to a not-for-profit entity operating in Queens, New York (the "Victim Institution").

3. The Victim Institution is a 501(c)(3) not-for-profit organization that provides services to young adults at multiple locations in Southeast Queens. The Victim Institution receives the substantial majority of its funds from New York City government agencies. According to the Victim Institution's most recent publicly available tax filings, it received approximately:

   a. $3.48 million in funds from New York City government agencies (out of total revenues of approximately $3.9 million) for fiscal year 2017 (July 1, 2017 – June 30, 2018);

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

Case 1:20-mj-00854-RER *SEALED* Document 1 Filed 09/28/20 Page 5 of 15 PageID #: 3
Case 20-mj-00854-SEALED Document Filed 09/26/2020 Page 3 PageID #: 21

3

    b. $3.12 million in funds from New York City government agencies (out of total revenues of approximately $3.51 million) for fiscal year 2016 (July 1, 2016 – June 30, 2017);

    c. $3.30 million in funds from New York City government agencies (out of total revenues of approximately $3.40 million) for fiscal year 2015 (July 1, 2015 – June 30, 2016); and

    d. $2.57 million in funds from New York City government agencies (out of total revenues of approximately $2.91 million) for fiscal year 2014 (July 1, 2014 – June 30, 2015).

4. At all times relevant to this Complaint, the defendant INGRIS CORONADO ("CORONADO") was employed by the Victim Institution as a Program Director at a middle school in Queens, New York (the "Queens Middle School"). The Victim Institution's program at the Queens Middle School has been funded by a contract with a New York City government agency since at least September 2007, including a contract entered into between the Victim Institution and the New York City Department of Youth and Community Development ("DYCD") in the amount of approximately $3.87 million for services provided between September 1, 2017 and June 30, 2020.

<u>CORONADO'S Theft of the Victim Institution's Funds</u>

5. As set forth in greater detail below, the investigation has identified evidence that CORONADO has repeatedly defrauded the Victim Institution by causing it to issue checks in the names of individuals or vendors employed by the Victim Institution that CORONADO then deposited into her personal bank account (the "Coronado Bank Account") for her own use.

<u>Fraud Involving the Victim Institution's Employee Paychecks</u>

6. As part of the investigation, law enforcement agents and investigators have reviewed the Coronado Bank Account. In connection with that review, investigators have identified numerous instances in which checks that appear to be payroll checks that

were drawn against the Victim Institution's bank accounts and payable to various employees of the Victim Institution were in fact double endorsed by Coronado and deposited into the Coronado Bank Account. In total, between in or about August 2014 and September 2018, investigators have identified approximately $20,000 of checks made out to at least 13 different individuals (the "Victim Employees") that were deposited into the Coronado Bank Account.

7. At all times relevant to this Complaint, the Victim Institution's payroll services were handled by a payroll processing company (the "Payroll Processor"). The Payroll Processor's headquarters were located in New Jersey.

8. Since in or about January 2018, the Payroll Processor generated paychecks for employees of the Victim Institution in the following manner. Authorized employees of the Victim Institution (the "Authorized Employees") entered hours and wage rates for the Victim Institution's employees for each pay period. The Authorized Employees entered the wage and hour information into an internet-based portal (the "Portal"). The Authorized Employees were only able to access the Portal by entering a unique user name and password. Using the information that the Authorized Employees entered into the Portal, the Payroll Processor would generate payments to the employees of the Victim Institution – either as direct deposit transfers or as physical checks that were mailed to the Victim Institution's headquarters in Queens, New York. Prior to January 2018, an employee of the Victim Institution electronically submitted payroll data to the Payroll Processor, but the Victim Institution did not use the Portal.

9. In connection with the investigation, agents have interviewed an individual who was employed by the Victim Institution between in or about 2014 and early

2018 (the "Victim Institution Bookkeeper"). The Victim Institution Bookkeeper worked in the Victim Institution's accounts payable department in or about and between 2015 and early 2018. In that capacity, the Victim Institution Bookkeeper was aware that CORONADO served in a supervisory capacity at the Victim Institution and was responsible for approving employee time sheets and submitting those time sheets to the Victim Institution's payroll staff to be submitted to the Payroll Processor.

Victim Employees

Victim Employee-1

10. In connection with the investigation, law enforcement investigators interviewed an individual who had been employed by the Victim Institution ("Victim Employee-1").

11. Victim Employee-1 confirmed that s/he had worked at the Victim Institution for approximately two months during the summer of 2014, s/he worked as a teacher at a summer program offered at a middle school located in Queens, New York. In connection with that work, Victim Employee-1 was paid by check from the Victim Institution.

12. While Victim Employee-1 was employed at the Victim Institution in 2014, s/he resided with INGRIS CORONADO and a family member of CORONADO who was also employed at the Victim Institution ("Associate-1").

13. During the interview, Victim Employee-1 was shown two checks written to his/her name that were drawn against the JP Morgan Chase account held in the name of the Victim Institution account (the "Chase Account") dated: (i) July 15, 2014 (in the amount of $298.96); and (ii) July 31, 2014 (in the amount of $228.87). Victim Employee-1

believed that these were checks s/he had received for work at the Victim Institution as the dates on the checks corresponded with Victim Employee-1's employment with the Victim Institution. Further, Victim Employee-1 indicated that the check amounts were consistent with his/her recollection of how much s/he was paid and the endorsement on the back of the checks appeared to be his/her signature.

14. During the same interview, Victim Employee-1 was also shown two checks drawn against the Chase Account dated: (i) August 15, 2014 in the amount of $375.41 and (ii) September 2, 2014 in the amount of $447.72 (the "Forged Victim Employee-1 Checks"). Victim Employee-1 indicated that the endorsement signature on the Forged Victim Employee-1 Checks did not belong to him/her. Victim Employee-1 further noted that the dates on the Forged Victim Employee-1 Checks were for a time after his/her work with the Victim Institution had finished and so s/he would not have been entitled to a paycheck.

15. Victim Employee-1 further confirmed that while s/he was living with CORONADO and Associate-1, s/he had never asked CORONADO or Associate-1 to cash checks for him/her or endorsed checks over to either individual.

16. Bank records reflect that on or about August 18, 2014 and September 2, 2014, the Forged Victim Employee-1 Checks were deposited into the Coronado Bank Account.

Victim Employee-2

17. In connection with the investigation, law enforcement investigators interviewed a second individual who had been employed by the Victim Institution ("Victim Employee-2").

18. Victim Employee-2 confirmed that s/he had worked at the Victim Institution intermittently between in or about April 2016 and December 2018. Victim Employee-2 indicated that s/he knew Associate-1 socially and became familiar with the Victim Institution from his/her interactions with CORONADO and Associate-1. Victim Employee-2 was interviewed for a job at the Victim Institution by CORONADO and was hired by the Victim Institution.

19. During Victim Employee-2's employment with the Victim Institution, Victim Employee-2 wrote down his/her work hours at the beginning and end of each shift. CORONADO would enter the hours into a system and print out a timesheet for Victim Employee-2 to review and sign. In a few instances where the time sheet had errors, Victim Employee-2 discussed the issue with CORONADO and the proper time was entered.

20. In connection with his/her work at the Victim Institution, Victim Employee-2 was compensated on a bi-weekly basis by paper check that was given to him/her by CORONADO or another employee of the Victim Institution. Victim Employee-2 had made a request to be switched to a "direct deposit" paycheck, but was informed by CORONADO that the process "took too long."

21. During the interview, investigators showed Victim Employee-2 sixteen checks dated between January and August 2018, totaling approximately $12,400, that were purportedly issued to Victim Employee-2 and that appear to be Victim Institution payroll checks (the "Forged Victim Employee-2 Checks"). Victim Employee-2 indicated that s/he had never received the Forged Victim Employee-2 Checks and that the endorsement signature on the Forged Victim Employee-2 Checks did not belong to him/her. Victim Employee-2 further indicated that s/he did not authorize any other individual to deposit the

Case 1:20-mj-00854-RER Document 1 Filed 09/28/20 Page 13 of 15 PageID #: 8
Case 20-mj-00854-SEALED Document 1-1 Filed 09/30/20 Page 5 PageID #: 26

8

Forged Victim Employee-2 Checks on his/her behalf. Victim Employee-2 further noted that the Forged Victim Employee-2 Checks were dated for a period of time during 2018 when s/he was not employed at the Victim Institution and would not have therefore received a paycheck.

22. Bank records reflect that on or about and between January 17, 2018 and August 31, 2018, the Forged Victim Employee-2 Checks were deposited into the Coronado Bank Account.

Victim Employee-3

23. In connection with the investigation, law enforcement investigators interviewed a third individual who had been employed by the Victim Institution ("Victim Employee-3").

24. Victim Employee-3 confirmed that s/he had worked at the Victim Institution between June and August 2016 and then again between December 2016 and July 2017. Victim Employee-3 confirmed s/he had been recruited to work there by Associate-1. Victim Employee-3 confirmed that s/he had been paid approximately $12 per hour for his/her work at the Victim Institution and was paid via direct deposit. Victim Employee-3 further indicated that s/he was promoted to a salaried position at the Victim Institution and that, due to some of his/her account information being entered improperly to reflect the promotion, Victim Employee-3 received paper checks on two occasions.

25. During the interview, which took place in August 2019, s/he was shown a check written to his/her name that was drawn against the Victim Institution's Bank of America Account, dated July 29, 2016 in the amount of $672.62 (the "Forged Victim

Employee-3 Check"). Victim Employee-3 confirmed that s/he had not seen this check prior to it being shown to him/her by DOI investigators during the interview.

26. Bank records reflect that the Forged Victim Employee-3 Check was deposited into the Coronado Bank Account on or about August 1, 2016.

27. In addition to Victim Employee-1, Victim Employee-2 and Victim Employee-3, law enforcement agents have interviewed six other Victim Institution employees, each of whom was supervised by CORONADO. In each case, the Victim Employee was shown one or more checks that were issued by the Victim Institution to the Victim Employee (the "Forged Victim Employee Checks"). In each case, the Victim Employee confirmed that he or she had not received the Forged Victim Employee Checks and that the endorsement on the back did not belong to him/her.

28. In total, law enforcement agents have identified at least 42 Forged Victim Employee Checks totaling $20,121.55. In each case, the Forged Victim Employee Check was deposited into the Coronado Bank Account.

### The Victim Vendors

29. In connection with the investigation, law enforcement agents have also identified multiple instances in which checks that were drawn against bank accounts held in the Victim Institution's name and issued to individuals or entities that had provided services to the Victim Institution (the "Victim Vendors") were misappropriated by CORONADO.

Victim Vendor-1

30. In connection with the investigation, law enforcement agents interviewed an individual ("Victim Vendor-1") who had provided assistance to the Victim

Institution to prepare an application to receive grant funding from a New York City government agency on behalf of the Victim Institution (the "NYC Grant Application").

31. Victim Vendor-1 met with CORONADO in or about September 2014. From late 2014 through approximately February 2015, Victim Vendor-1 worked with CORONADO to prepare the "NYC Grant Application." Victim Vendor-1 recalled that his/her work on the NYC Grant Application lasted two or three weeks and that CORONADO was his/her principal point of contact. Victim Vendor-1 did not recall any discussion with CORONADO or anyone else at the Victim Institution about the amount that s/he would be compensated for working on the NYC Grant Application.

32. Victim Vendor-1 confirmed that in or about December 2017, s/he was paid $5,000 by the Victim Institution for his/her work on the NYC Grant Application.

33. During the interview, Victim Vendor-1 was shown a check written to his/her name drawn against the Victim Institution Chase Account, dated June 30, 2016, in the amount of $2,500.00 (the "Forged Victim Vendor-1 Check"). Victim Vendor-1 confirmed that s/he had not seen this check prior to it being shown to him/her by investigators on or about August 26, 2019. Victim Vendor-1 further confirmed that the signature on the back of the check was not his/her signature.

34. Bank records reflect that the Victim Vendor-1 Check was deposited into the Coronado Bank Account on or about September 8, 2016.

<u>Victim Vendor-2</u>

35. In connection with the investigation, law enforcement investigators interviewed an individual ("Victim Vendor-2") who had provided assistance to the Victim Institution in preparing the NYC Grant Application.

36. In or about January 2013 through June 2016, Victim Vendor-2 was employed by the New York City Department of Education at the Queens Middle School where CORONADO also worked on behalf of the Victim Institution.

37. In or about February 2015, CORONADO requested Victim Vendor-2's assistance with the NYC Grant Application and Victim Vendor-2 assisted CORONADO in revising the NYC Grant Application. Victim Vendor-2 never discussed with CORONADO receiving compensation from the Victim Institution in connection with Victim Vendor-2's assistance. Victim Vendor-2 learned at some later date that the Victim Institution had been awarded the NYC Grant.

38. Approximately one year later, CORONADO contacted Victim Vendor-2 and informed him/her that CORONADO wanted to pay Victim Vendor-2 $1,000 for his/her work on the NYC Grant Application. Victim Vendor-2 provided CORONADO with his/her contact information to facilitate the payment, which Victim Vendor-2 believed would be paid by the Victim Institution, the New York City Department of Education or funds associated with the NYC Grant (and not from CORONADO personally).

39. Victim Vendor-2 never received any funds from CORONADO and never spoke with CORONADO about not receiving the funds.

40. During the interview, Victim Vendor-2 was shown a check drawn against the Victim Institution Chase Account, dated June 30, 2016 and written to his/her name in the amount of $1,000 (the "Forged Victim Vendor-2 Check"). Victim Vendor-2 confirmed that s/he had not seen this check prior to it being shown to him/her by investigators on or about August 29, 2019 and that the endorsement signature on the check did not belong to him/her.

41. Bank records reflect that the Victim Vendor-2 Check was deposited in to the Coronado Bank account on or about August 26, 2016.

Victim Vendor-3

42. In connection with the investigation, law enforcement investigators interviewed another individual ("Victim Vendor-3") whose company had provided entertainment services to the Victim Institution.

43. Victim Vendor-3 indicated that his/her company had provided entertainment services to the Victim Institution in or about August 2015. Victim Vendor-3 further told investigators that in August 2015, the Victim Institution had issued his/her company check in the amount of $1,000, which represented payment-in-full for the August 2015 services. Victim Vendor-3 confirmed that his/her company had cashed the check and noted that s/he recognized the endorsement stamp on the back of the August 14, 2015 check.

44. During the interview, Victim Vendor-3 was shown a second check, dated June 30, 2016, in the amount of $2,500 that was drawn against the Victim Institution Chase Account to his/her company (the "Forged Victim Vendor-3 Check"). Victim Vendor-3 stated that his/her company had not provided any services to the Victim Institution in 2016 and had not received or deposited the Forged Victim Vendor-3 Check. Victim Vendor-3 further indicated that he did not recognize the endorsement on the Forged Victim Vendor-3 Check and noted that Victim Vendor-3 and his/her company used a stamp (as opposed to a signature) to endorse checks.

45. Bank records reflect that the Victim Vendor-3 Check was deposited in to the Coronado Bank account on or about August 19, 2016.

Victim Vendor-4

46. In connection with the investigation, law enforcement investigators interviewed an individual representative (the "Representative") of a company ("Victim Vendor-4") that had purportedly provided entertainment services to the Victim Institution.

47. Investigators provided Victim Vendor-4's Representative with an April 21, 2016 check, in the amount of $1,057.00 that had been issued by the Victim Institution to Victim Vendor-4 (the "Forged Victim Vendor-4 Check") and, per the memo line of the Victim Vendor-4 Check, related to "Movie Tickets NF."

48. The Representative confirmed that Victim Vendor-4 had no records relating to any services provided to the Victim Institution in or about April 2016. Additionally, the Representative confirmed that Victim Vendor-4 (and Victim Vendor-4's bank) had no record of Victim Vendor-4 ever receiving or depositing the Forged Victim Vendor-4 Check.

49. Bank records reflect that the Victim Vendor-4 Check was deposited in to the Coronado Bank account on or about May 6, 2016.

The Interview of CORONADO

50. On or about September 14, 2020, CORONADO was interviewed by the undersigned outside of her residence in Staten Island, New York. She was advised of the identity of the interviewers and that her participation in the interview was voluntary.

51. During the interview, CORONADO stated the following in sum and substance and in part:

    a. She had been employed at the Victim Institution for approximately 7 years and works a director for two of the Victim Institution's programs;
    b. She regularly oversees between 5 and 20 part-time employees;

    c. CORONADO, or a deputy reporting to her, is responsible for approving and submitting the computerized timesheets of the employees who report to her via the Payroll Processor. These employees then receive their checks via direct deposit or, if the employee does not use direct deposit, via paper checks that are delivered to the Victim Institution's main office; and

    d. Once the checks are delivered to the Victim Institution's main office, CORONADO or someone she supervises will bring the checks to their program site to be distributed to the employees by CORONADO or someone acting at her direction.

52. During the interview, the undersigned showed CORONADO a copy of one of the Forged Victim Employee Checks that had been deposited into the Coronado Bank Account. CORONADO indicated that she had either deposited the money in the Victim Employee's account or into the Coronado Bank Account, in which case she had then had paid the Victim Employee in cash. She indicated that this check reflected the only time that she had deposited a check belonging to an employee of the Victim Institution into an account she controlled.

53. The undersigned then showed CORONADO a copy of one of the Forged Victim Vendor Checks that had been deposited into the Coronado Bank Account. She claimed that the deposit was a result of an error and that she had reimbursed the Victim Institution in cash.

54. The undersigned advised CORONADO that making false statements to a federal agent constituted a crime and further advised CORONADO that there appeared to be numerous Forged Victim Employee Checks deposited into the Coronado Bank Account.

55. CORONADO stated that with respect to certain Forged Victim Employee Checks, the employees received the money represented in the Forged Victim Employee Checks, and in other instances, she kept the money for herself.

15

WHEREFORE, your deponent respectfully requests that the defendant INGRIS CORONADO be dealt with according to law.

_____
ANTHONY CASOLA
Special Agent, Federal Bureau of Investigation

Sworn to before me by telephone this
23 day of September, 2020

       S/ RLM
_____
THE HONORABLE ROANNE L. MANN
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK